IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



UNITED STATES OF AMERICA

v.                                                   Criminal Case No. 4:12cr83

CHRISTIAN JOHNSON,

Defendant.

## OPINION AND ORDER

This matter comes before the Court on Defendant Christian Johnson's ("Defendant") Motion to Sever counts of the indictment for trial. Doc. 18. On January 15, 2013, the Court convened a hearing and ruled from the bench. The Court **DENIED** Defendant's Motion and now issues this Opinion and Order setting forth the reasons for its ruling in further detail.[1]

## I. BACKGROUND

### A. Facts[2]

On June 21, 2012, an individual allegedly confronted an employee of Approved Cash Advance, located on Virginia Beach Boulevard in Norfolk, Virginia, as the employee was

---

[1] Defendant also made a Motion to Suppress Pre-Trial Identification and In-Court Identification on October 19, 2012. Doc. 19. However, on October 26, 2012, Defendant moved to withdraw this motion. Doc. 20. Accordingly, as the Government has not objected to Defendant's Motion to Withdraw its Motion to Suppress, and for good cause shown, the Court hereby **GRANTS** Defendant's Motion (Doc. 20) and **ORDERS** that that the Motion to Suppress (Doc. 19) be withdrawn.

[2] This factual summary is derived from the Indictment and from the Government's proffer as to what the evidence will be at trial and is made only for the purpose of ruling on this Motion to Sever. See United States v. Hackley, No. 5:09cr00018, 2009 WL 3334595 (W.D. Va. Oct. 15, 2009) (using additional evidence proffered by the Government to find that joinder of two counts was proper); United States v. Sampson, No. 3:05cr00011, 2006 WL 533377, at *3 (W.D. Va. Mar. 2, 2006) (holding that a district court may use additional evidence proffered by the Government in ruling on a motion to sever); see also United States v. Dominguez, 226 F.3d 1235, 1240 (11th Cir. 2000) ("It is enough that when faced with a Rule 8 motion, the prosecutor proffers evidence which will show the connection between the charges."); United States v. Halliman, 923 F.2d 873, 993 (D.C. Cir. 1991) ("[T]he government need not demonstrate the propriety of its joinder decisions on the face of the indictment.").

1

leaving the store for the night. Doc. 21 at 2. As the employee walked towards her vehicle with $1,631.36 of store proceeds in her purse that she intended to deposit, the individual appeared and told her to drop the bag. Id. The individual then displayed a firearm, pulled the bag from the employee's shoulder, and, after a brief struggle, fled with the employee's purse and the store's money. Id. The employee stated that her attacker was wearing a black t-shirt and fled in a small, light-colored car. Id. She later identified Defendant as the robber from a photograph lineup. Id.

Next, on July 1, 2012, an individual entered a 7-Eleven convenience store in Chesapeake, Virginia, and demanded money from the store clerk. Id. Video surveillance showed this individual wearing a short-sleeve black t-shirt, black gloves, and a black ski mask pointing a firearm at the store clerk. Id. The surveillance system also recorded the robber's "distinctive forearm tattoos," which, allegedly, match those belonging to Defendant. Id. The robber then took the entire cash register drawer, containing $120.00, and fled in a silver or gray car. Id.

Two days later, on July 3, 2012, an individual entered a 7-Eleven convenience store in Hampton, Virginia, and demanded money from the store clerk while showing her a firearm. Id. The robber, here, wore a black, hooded sweatshirt, black gloves, and a black ski mask. Id. The store cashier gave him about $100.00. Id. A witness in the parking lot watched the robber flee the store in a compact, silver Suzuki Aerio and followed him while notifying the authorities. Id. This led to a high-speed chase by police, which eventually resulted in Defendant's arrest. Id. During the high-speed chase, Defendant allegedly discarded a black, hooded sweatshirt and a black glove onto the James River Bridge that were later recovered by the police. Id. Another black glove, a black ski mask, and two .45 caliber bullets were found in Defendant's vehicle. Id.

## B. Procedural History

On September 20, 2012, a federal grand jury returned a superseding indictment against Defendant charging him with three counts of Interference with Commerce by Robbery (Counts 1, 2, and 3), in violation of 18 U.S.C. § 1951, and two counts of Brandishing a Firearm During and in Relation to a Crime of Violence (Counts 4 and 5), in violation of 18 U.S.C. § 924(c). A jury trial is currently scheduled to begin on January 28, 2013.

On October 19, 2012, Defendant filed his "Motion for Severance of Counts," requesting that each alleged robbery, along with its corresponding gun count, be tried separately from each other robbery.[3] Doc. 18. The Government filed its response on October 26, 2012. Defendant did not file a reply. On December 4, 2012, after being appointed new counsel, defense counsel adopted the Motion. As such, on January 15, 2013, the Court convened a hearing and ruled from the bench.

## II. DISCUSSION

In order to succeed on his Motion to Sever, Defendant must demonstrate either that joinder is improper under Federal Rule of Criminal Procedure 8(a) or that severance is warranted under Rule 14(a), despite the propriety of joinder. The Court will address each in turn.

## A. Joinder under Rule 8(a)

Federal Rule of Criminal Procedure 8(a) "provides that '[t]he indictment . . . may charge a defendant in separate counts with [two] or more offenses if [1] the offenses charged . . . are of the same or similar character, . . . [2] are based on the same act or transaction, or [3] are connected with or constitute parts of a common scheme or plan." United States v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005) (quoting Fed. R. Crim. P. 8(a)) (alterations in original). "Rule 8(a)

---

[3] Defendant asserts that the counts should be severed as follows: Counts 1 and 4, Count 2, and Counts 3 and 5. Doc. 18 at 1-2.

permits 'very broad joinder,' . . . 'because the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding.'" United States v. Hawkins, 589 F.3d 694, 700 (4th Cir. 2009) (internal citations omitted). As such, "joinder is the 'rule rather than the exception,' . . . 'because of the efficiency in trying the defendant on related counts in the same trial.'" Id. at 700-01 (internal citations omitted).

"The requirements of Rule 8(a), however, 'are not infinitely elastic,' . . . 'and so cannot be stretched to cover offenses . . . which are discrete and dissimilar.'" Id. at 701 (quoting United States v. Mackins, 315 F.3d 399, 412 (4th Cir. 2003)). This prohibition against the joinder of unrelated offenses protects against "the possibility that a defendant will be convicted based on considerations other than the facts of the charged offense." Cardwell, 433 F.3d at 385 (internal citations omitted).

In determining whether offenses are of the "same or similar character," joinder is routinely allowed where a defendant is charged with multiple violations of the same statute. Hawkins, 589 F.3d at 702-03 ("[I]t is an unremarkable example of offenses of the 'same or similar character' when the defendant is charged only with multiple violations of the same statute."); United States v. Acker, 52 F.3d 509, 514 (4th Cir. 1995) ("Trial courts routinely allow joinder of different bank robbery counts against a single defendant in the same indictment."); see also United States v. Rousseau, 257 F.3d 925, 932 (9th Cir. 2001) (holding that two counts of being a felon in possession of a firearm were "clearly" of a same or similar character and properly joined even though the two offenses involved two different guns and occurred nearly six and a half months apart) (holding approved by Hawkins, 589 F.3d at 702-03, as one such "unremarkable example of offenses of the 'same or similar character'").

4

With respect to whether offenses are "based on the same act or transaction," or are "connected with or constitute parts of a common scheme or plan," the Fourth Circuit has interpreted these prongs of Rule 8(a) "flexibly, requiring that the joined offenses have a 'logical relationship' to one another." Cardwell, 433 F.3d at 385 (citing United States v. Hirschfeld, 964 F.2d 318, 323 (4th Cir. 1992)). "Such a relationship exists when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise." Id. (internal citations omitted). A "mere temporal relationship," alone, is not sufficient to show that two crimes are logically related, id. at 386, but such a fact, combined with additional evidence, may provide the required link if "a factfinder [can] infer" the "logical connection between the two counts." See id. at 387.

Here, both the similarity between the alleged robberies at issue and the fact that Defendant is charged only with multiple violations of two intertwined statutes persuade the Court that joinder is proper. Indeed, Defendant is charged with three counts of Interference with Commerce by Robbery (Counts 1, 2, and 3), in violation of 18 U.S.C. § 1951, and two counts of Brandishing a Firearm During and in Relation to a Crime of Violence (Counts 4 and 5), in violation of 18 U.S.C. § 924(c). Notably, Defendant is charged with the brandishing of firearms <u>during</u> the commission of the robberies at issue. Thus, not only has Defendant been charged with violating two sets of identical statutes, but those alleged violations are "logically related" to each other, as they all stem from one of three robbery transactions.[4] See Cardwell, 433 F.3d at 387. As such, because Defendant is charged only with multiple violations of the same two, intertwined statutes, joining the five counts of the indictment for trial under Rule 8(a) results in

---

[4] Defendant admits that each robbery count should be tried with its concomitant gun count, and only argues for the severance of each robbery count, along with its corresponding gun count, from the other robbery and gun counts. See Doc. 18 at 1-2 ("[Defendant] asserts the counts should be severed as follows: Counts 1 and 4, Count 2, and Counts 3 and 5.").

nothing more than another "unremarkable example of offenses of the 'same or similar character'" being tried together. See Hawkins, 589 F.3d at 702-03; see also Acker, 52 F.3d at 514 (holding that joinder of four bank robbery counts with a corresponding firearms and conspiracy count was proper); United States v. Foutz, 540 F.2d 733, 736-38 (4th Cir. 1976) (holding that two bank robberies were properly joined as "of the same or similar character" under Rule 8(a) even though they were so dissimilar that severance was required under Rule 14).

What is more, the factual similarities between the alleged conduct that underlies each of the counts at issue confirms their similar character. In fact, all three robberies involved retail establishments where cash likely would be readily available and occurred within a two-week period, from June 21, 2012 to July 3, 2012. Doc. 21 at 1-2. Further, in all three robberies, the robber acted alone, wore all black clothing, used a firearm, stole money, and fled the scene in vehicles matching a similar description. Id. at 4. Consequently, taking into account this wealth of factual connections, the fact that Defendant was charged under only two intertwined statutes, and the "very broad joinder" requirements of Rule 8(a), joinder in this case is plainly proper.[5] See United States v. McManus, No. 12CR356(JMF), 2012 WL 3526669, at *4 (S.D.N.Y. Aug. 10, 2012) ("But joinder does not require evidence of identical methods or a unique modus operandi. To the contrary, in a case "involving similar counts, institutional victims, mode of operation and time period," joinder is plainly proper.") (emphasis in original) (citing United

---

[5] Defendant's attempts to differentiate the three robberies at issue fail to provide meaningful distinctions sufficient to overcome Rule 8(a)'s joinder rule. First, Defendant notes that each robbery occurred in a different city – Norfolk, Chesapeake, and Hampton – but this appears to be a distinction without a difference, as all three occurred within the Tidewater area. See Chambers, 964 F.2d at 1251 (finding that six robberies from within the "greater Boston area" all took place in a "limited area"). Second, Defendant finds it significant that the first robbery occurred outside of an Approved Cash Advance while the next two occurred within 7-Eleven conveniences stores, yet considering the similarities identified above, both between the retail stores, themselves, and between the method and operation of the robberies at issue, such minor inconsistencies do not overcome Rule 8(a)'s broad joinder requirements. See McManus, 2012 WL 3526669, at *4. Finally, Defendant argues that many of the existing similarities between the robberies are typical of this type of criminal enterprise and do not meaningfully tie the robberies together, but the Court is persuaded that enough distinctive connections exist so as to make joinder here proper. Moreover, as discussed below, on balance, such distinctive connections outweigh any differences that may exist between the robberies, and thus, overcome any prejudice that Defendant might otherwise incur.

States v. Chambers, 964 F.2d 1250, 1251 (1st Cir. 1992) (Breyer, C.J.)). Accordingly, the Court **FINDS** that the five counts of the indictment are properly joined under Rule 8(a) as offenses of the "same or similar character."

**B. Severance under Rule 14(a)**

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses . . . for trial appears to prejudice a defendant . . ., the court may order separate trials of counts . . . ." Cardwell, 433 F.3d at 387 (quoting Fed. R. Crim. P. 14(a)). "This rule contemplates that joinder under Rule 8(a) can be proper and, at the same time, severance can be required." Id. However, as the Fourth Circuit has explained:

> Such cases . . . will be rare. It is not enough for the defendant to show that severance offers him "a better chance of acquittal." United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995) (internal quotation marks omitted). Rather, the Supreme Court has admonished that "when defendants properly have been joined under [Rule 8], a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." Zafiro [v. United States, 506 U.S. 534, 539 (1993)].

Id. (emphasis in original). Indeed, "[a] defendant seeking severance pursuant to Rule 14 'has the burden of demonstrating a strong showing of prejudice.'" United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008) (quoting United States v. Goldman, 750 F.3d 1221, 1225 (4th Cir. 1984)). "[W]hether joinder is so prejudicial as to warrant severance is a matter committed to the discretion of the trial court." Id.

The Fourth Circuit has identified three sources of prejudice, which may, depending on their severity, justify the granting of a severance under Rule 14:

> (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated; (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or (3) the jury may conclude that the

7

> defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.

Foutz, 540 F.2d at 736 (citations omitted). Nevertheless, "where evidence of one crime is admissible at a separate trial for another, it follows that a defendant will not suffer any additional prejudice if the two offenses are tried together." Id. at 736-37. Likewise, it is not an abuse of discretion to deny severance "[i]n cases where the offenses are identical or strikingly similar in the method of operation and occur over a short period of time." Acker, 52 F.3d at 514.

For example, in Isom, the court held, based on the facts before it, that the two robberies at issue were "identical or strikingly similar in the method of operation," Isom, 138 Fed. App'x 574, 579 (4th Cir. 2005), and that any prejudice that occurred was "substantially mitigated by the fact that much of the evidence of one robbery would be admissible in the other." Id. at 581. First, the court noted that the two robberies occurred within eleven days of each other, and thus that "the two offenses 'occurred over a short period of time.'" Id. at 579 (quoting Acker, 52 F.3d at 514). Second, the court found that the alleged robber was "wearing similar clothing in each of the robberies, including a dark shirt, a white neckband, and a black baseball cap with the same or similar logo." Id. Third, the court observed that each robbery commenced in the same fashion, with the asking of change for twenty and ten dollar bills. Id. at 579-80. Finally, the court remarked that a gun was used and that cash was taken from two tellers. Id. at 580. Based on this evidence, the court concluded that the two robberies were "strikingly similar in the method of operation." Id. (citing Acker, 52 F.3d at 514).

Moreover, in determining whether the defendant might be prejudiced by the joinder of the counts at issue, the court emphasized the existence of strong identification evidence tying the defendant to each of the robberies at issue. Id. Specifically, the court observed that the defendant had been identified by his wife and other tellers as the perpetrator of each robbery,

8

despite the fact that much of the robber's face had been covered, based on the shape of his head, mouth, body, and mannerisms, and that this identification was corroborated by the defendant's distinctive tattoo, which was also visible in the surveillance footage. Id. The court also noted that the defendant presented an alibi witness who could not "state with any specificity whether [the defendant] was at work on the specific days, much less the specific times, that either of the two robberies occurred," id. at 581 (emphasis in original), and thus determined that neither identification of the defendant was significantly stronger than the other.

Accordingly, based on the similarities between the two robberies, the short time period at issue, and the existence of strong identification evidence tying the defendant to both robberies, the court found that "much of the evidence in the first trial would likely [have been] admissible in the second one," id. at 580, and, as a result, that any prejudice suffered was "substantially mitigated by [that] fact." Id. at 581; see also United States v. Cole, 857 F.2d 971, 974 (4th Cir. 1988) (holding that when evidence of different crimes "would be mutually admissible for legitimate purposes in separate trials for each offense," the possibility of prejudice requiring severance is "greatly diminished").

### *1. The Robberies of the Two 7-Elevens (Counts 2 and 3)*

Turning first to a discussion of the robberies of the two 7-Eleven convenience stores, these robberies share an almost identical modus operandi, and therefore, Defendant cannot meet his burden of demonstrating a strong showing of prejudice from their joinder. See Acker, 52 F.3d at 514. Indeed, these robberies occurred within two days of each other, both involved 7-11 convenience stores in the Tidewater area,[6] began with a single individual wearing a black ski-mask and black gloves and carrying a firearm entering the convenience store and demanding

---

[6] As discussed above, the fact that these robberies technically occurred in different cities does not meaningfully distinguish them, as they all occurred within the Tidewater area. See Chambers, 964 F.2d at 1251 (finding that six robberies from within the "greater Boston area" all took place in a "limited area").

9

money, and ended with the individual fleeing the scene in a small light-colored vehicle. Doc. 21 at 2. As such, the Court **FINDS** that these two robberies are classic examples of "offenses [that] are identical or strikingly similar in the method of operation and occur over a short period of time," and thus, should be tried together. Acker, 52 F.3d at 514; see also Isom, 138 Fed. App'x at 579; Chambers, 964 F.2d at 1251 ("In such a case, involving similar counts, institutional victims, mode of operation and time period, joinder is proper.").

### *2. The Robberies of the Two 7-Eleven Convenience Stores and the Robbery of the Approved Cash Advance (Counts 2&3 and Count 1)*

Turning next to whether the first robbery (Count 1) should be tried with the other two robbery counts (Counts 2 & 3), although some differences do exist between the robberies, those differences are outweighed by their similarities, and, along with the strong identification evidence presented here, are sufficient to reduce any prejudice that Defendant might otherwise incur from a joint trial. To begin, as described above, all three robberies involved retail stores where readily available cash was likely to be at hand and occurred within a two-week period. Doc. 21 at 1-2. Moreover, all three robberies involved a single individual wearing all black, displaying a handgun, and verbally demanding some action from the employee in question.[7] Id. at 2. Finally, the robber of all three establishments fled the scene in substantially the same manner, using a car that matched substantially the same description. Id.

Thus, although the facts of the first robbery are not identical to those in the second and third, the three robberies were sufficiently close in time and similar in manner of operation to permit the introduction of evidence of any one of the robberies in the trial of any of the others

---

[7] Although the perpetrator of the third robbery wore a black sweatshirt while the perpetrator of the first two wore a black t-shirt, taken as a whole, the all-black costume worn at each robbery is sufficiently similar to tie all three robberies together. Further, as there is no doubt that the second and third robberies should be tried together, the fact that the black t-shirt ties the first and second robberies together serves as an additional tie between all three robberies, and therefore lessens any prejudice that might result from trying the different counts together.

under Rule 404(b), in order to prove Defendant's identity as the perpetrator of all three robberies.[8] See Isom, 138 Fed. App'x at 581; United States v. Haney, 914 F.2d 602, 607 (4th Cir. 1990) (finding where, in each robbery, a pistol was used, the robber warned against the use of a dye pack, a getaway car was used, and a police scanner was used, that such evidence was sufficient under Rule 404(b) to admit evidence of a prior robbery as "evidence of a signature crime"); United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997) (explaining that "the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes" for purposes of Rule 404(b)); see also United States v. Carlton, 534 F.3d 97, 101-02 (2d Cir. 2008) ("While any of the similarities between the prior bank robberies and the charged crime – such as location, the takeover style of the robberies, or use of a getaway car – when viewed in isolation may not have established a modus operandi, taken together they establish the existence of a pattern.") (internal citations omitted); McManus, 2012 WL 3526669, at *4 (holding, where there were "some minor differences among the robberies and the robber's modus operandi was not necessarily unique," that severance was not required) (emphasis in original) (internal citations omitted). Consequently, it follows that, should the three robbery counts be tried together, Defendant will not suffer any additional prejudice. Isom, 138 Fed. App'x at 581. C.f. Foutz, 540 F.2d at 736-37.

---

[8] As noted by Defendant, the first robbery occurred outside of an Approved Cash Advance as the store employee was leaving for the night, while the other robberies occurred inside 7-11 convenience stores. Doc. 21 at 1-2. Moreover, in the first robbery, the perpetrator actually physically engaged with the victim, struggling with her and taking her purse, while in the later robberies, the robber only demanded what money was in the cash drawers. Id. at 2. Finally, the perpetrator of the first robbery did not wear a mask, while the robber did wear a ski mask during the latter two. Id. Additionally, a few of the similarities between the robberies identified by the Government, namely that the robber quickly rushed the employees in question and demanded money from them are such that would "all fit into an obvious tactical pattern which would suggest itself to almost anyone disposed to commit a depredation of this sort." See Foutz, 540 F.2d at 737. Yet, as described above, these differences pale in comparison to the similarities present in this case. Moreover, many such differences, including the robber's use of a mask during the last two robberies and his lack of physical contact with the employees, are easily explained by the robber's choice to rob the first employee outside of the store, away from surveillance cameras and store counters, rather than within the stores as occurred later.

Moreover, as occurred in Isom, powerful identification evidence exists here tying Defendant to each of the three robberies, further reducing the possibility that any prejudice might result from their joinder. See Isom, 138 Fed. App'x at 581. Indeed, Defendant was identified by an eye-witness as the perpetrator of the first robbery, he was identified by his "distinctive forearm tattoos" after the second robbery, and he was caught, after a high speed chase, fleeing from the third. Doc. 21 at 2. Additionally, as of this point, Defendant has not raised any alibi defense whatsoever. Thus, this is not a case where a substantial danger exists that a jury might convict Defendant of one of the robbery counts, not based on the evidence attributable to that count, but instead based on the fact of Defendant's alleged participation in the other robberies.[9] See Isom, 138 Fed. App'x at 581; see also United States v. Clayton, 450 F.2d 16, 19 (1st Cir. 1971) (affirming district court's refusal to sever multiple charges as the case was "not an instance where a weak evidentiary case and a strong one were joined in the hope that an overlapping consideration of the evidence would lead to convictions on both"). C.f. Foutz, 540 F.3d at 739 ("We think it highly probable that a jury ignorant of the second crime and Foutz' alleged participation therein would have acquitted him of the earlier robbery.").[10]

---

[9] During the hearing, counsel for Defendant argued that Defendant would be prejudiced by the fact that Defendant was caught fleeing from the third robbery after a high-speed chase and that the jury would be unable to separate its consideration of this evidence from its consideration of the evidence pertaining to the other counts. Although the Court does believe that this type of evidence might, in some situations, cause a risk of prejudice to ensue, here the Court is persuaded that the strong factual similarities and potent identification evidence present mitigate any prejudice that Defendant might otherwise face.

[10] At bottom, considering the large number of similarities between the robberies at issue and the powerful identification evidence present, the few differences that do exist simply do not rise to a level that would make evidence of one robbery inadmissible in the trial of another or that would meet Defendant's heavy burden of demonstrating prejudice sufficient to require severance. Compare Foutz, 540 F.2d at 737-38 (holding that severance was required where the two robberies at issue occurred over three months apart and were committed by a different number of individuals playing different roles and fleeing in different manners, where no direct evidence tied the defendant to both robberies, and where the defendant had a convincing alibi as to one of the two robberies) with Isom, 138 Fed. App'x at 580-81 (holding, as discussed above, that severance of two robbery counts was not warranted and distinguishing Foutz based on the shorter period of time that had elapsed between the two robberies (eleven days), the stronger factual similarities that existed, the direct identification evidence that tied the defendant to each of the robberies, and the defendant's lack of a credible alibi witness).

In short, based on the brief period of time and strong similarities between the three robberies at issue, as well as the existence of formidable identification evidence tying the Defendant to all three robberies, the Court **FINDS** that much of the evidence of one robbery would be admissible at the trial of any of the other robberies, and as a result, that there is very little risk that Defendant will be prejudiced by the joinder of all three robberies. See Isom, 138 Fed. App'x at 581; Cole, 857 F.2d at 974.[11] Accordingly, the Court **FINDS** that Defendant has failed to meet his burden of demonstrating that joinder is so prejudicial as to warrant severance.

## III. CONCLUSION

For the reasons stated herein and at the January 15, 2013 hearing, the Court **FINDS** that the five counts of the indictment are properly joined under Rule 8(a) as offenses of the "same or similar character." The Court further **FINDS** that Defendant has failed to make a showing of prejudice under Rule 14(a) sufficient to require severance. Accordingly, the Court hereby **DENIES** Defendant's Motion to Sever. Doc. 18. Additionally, the Court hereby **GRANTS** Defendant's Motion to Withdraw its Motion to Suppress (Doc. 20) and **ORDERS** that the Motion (Doc. 19) be withdrawn from the docket.

---

[11] And to the extent that some small potential for prejudice still exists, upon the request of the parties, the Court shall issue an instruction at trial requiring the jury to consider each charged crime, and the evidence pertaining to it, separately so as to neutralize any such possibility. See Mackins, 315 F.3d at 415 (finding that the trial court's limiting instructions "mitigate[d] the effect of any possible spillover of prejudicial evidence") (internal citations omitted); see also Cardwell, 433 F.3d at 388 (quoting Zafiro, 506 U.S. at 539-40 ("When the risk of prejudice [from joint trials] is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."); United States v. Bullock, 71 F.3d 171, 175 (5th Cir. 1995) ("[The defendant] cannot show that he was prejudiced by the failure to sever counts, as the court admonished the jury that it could consider [his] prior felony conviction only in connection with the firearm count.")).

The Clerk is **REQUESTED** to mail a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: January 23, 2013